FILED
U.S. District Court
District of Kansas
09/01/2026
Clerk, U.S. District Court
By: SND Deputy Clerk

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

**TRACY ALAN MARKEE,**

**Plaintiff,**

**v.** **CASE NO. 26-3218-JWL**

**JEFF ZMUDA, et al.,**

**Defendants.**

**MEMORANDUM AND ORDER**

Plaintiff and state prisoner Tracy Alan Markee began this pro se action under 42 U.S.C. § 1983 by filing a complaint (Doc. 1) and a motion for temporary restraining order and preliminary injunction (Doc. 2) on July 7, 2026. Plaintiff is in custody at El Dorado Correctional Facility ("EDCF") in El Dorado, Kansas. On July 22, 2026, Plaintiff filed a motion for leave to proceed in forma pauperis. (Doc. 5.) The Court granted the motion the same day, assessed an initial partial filing fee of $2.50, and granted Plaintiff until and including August 21, 2026 to submit payment. (Doc. 6).

On August 28, 2026, the Court received payment from Plaintiff in the amount of $405.00. Because Plaintiff had been granted leave to proceed in forma pauperis, the check was returned to the KDOC as an overpayment. The Court appreciates Plaintiff's efforts to pay the filing fee in this matter and will grant Plaintiff until and including October 1, 2026 to either submit the $2.50 initial partial filing fee assessed on August 4, 2026 (Doc. 6) or, if Plaintiff wishes to pay the filing fee in full at this time, submit the full amount of the filing fee, which is $350.00 because he was granted leave to proceed in forma pauperis.

In the interest of efficiency, the Court has conducted the statutorily required screening of the complaint and Plaintiff will be given time to file an amended complaint that cures the deficiencies identified below. If Plaintiff fails to timely file an amended complaint or he fails to timely pay either the initial partial filing fee or the full filing fee, this matter will be dismissed without further prior notice to him. In addition, the Court has reviewed Plaintiff's motion for a temporary restraining order and preliminary injunction (Doc. 2), which will be denied without prejudice for the reasons explained below.

**I. Nature of the Matter before the Court**

As Defendants in this case, Plaintiff names Kansas Secretary of Corrections Jeff Zmuda and the following individuals who work at EDCF: Warden Tommy Williams, Deputy Warden Tyler Clark, Deputy Warden Maria Bos, Major Christopher Dean; Corrections Manager I Kirby Shearburn, Centurion[1] HSA Jason Hallock, Disciplinary Hearing Officer Tyler Scott, Unit Team Manager Zachary Little, Unit Team Shawn Chastain, and "unknown/unnamed" captains. (Doc. 1, p. 1-2, 4-7.) As the background of the case, Plaintiff asserts that he was illegally held in segregation for 77 days, retaliated against for submitting grievances, and subjected to illegal enforcement of Internal Management Policy and Procedure ("IMPP") 12-140A, resulting in the loss of employment, his placement in segregation, repeated disciplinary infractions, and the loss of property. *Id.* at 2-3. Plaintiff also asserts that Centurion staff were negligent and or deliberately indifferent about three separate medical issues he experienced and that Centurion, in conjunction with the Kansas Department of Corrections ("KDOC"), created and implemented illegal policies that deny medical treatment and violate the Health Insurance Portability and Accountability Act ("HIPAA"). *Id.* at 3.

---

[1] Plaintiff asserts that Centurion Medical is a private entity contractually obligated by the Kansas Department of Corrections to provide medical care to inmates and residents in its facilities. (Doc. 1, p. 3.)

In Count I, Plaintiff asserts the violation of his rights under the First, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution by his confinement in segregation, retaliation against him for grievances he submitted, an "illegal use of classification, and restitution." *Id.* at 8. As supporting facts for Count I, Plaintiff alleges that on February 5, 2026, he was given a disciplinary infraction and placed in segregation on a custody status of prehearing detention ("PHD"). *Id.* On February 9, 2026, Plaintiff attended a disciplinary hearing and entered into a plea agreement; he accepted a charge of class 1 theft, received 30 days on restriction, and was ordered to pay $286.67 in restitution. *Id.* at 10.

After the hearing, Plaintiff submitted a request to Defendant Little to be released from segregation and returned to general population, where restriction is usually served. *Id.* Defendant Little informed Plaintiff that Defendant Shearburn felt the disciplinary sanctions were insufficient, so he had imposed 30 days segregation. *Id.* Plaintiff asserts that Defendant Shearburn lacked the authority to impose the term of segregation. *Id.* On February 17, 2026, Plaintiff received the disciplinary hearing record and appealed the sanctions imposed, but the office of the KDOC Secretary deemed the sanctions legal. *Id.* Plaintiff then filed a grievance, to which Defendant Chastain responded on March 20, 2026 by stating that Plaintiff's grievance concerned a classification issue. *Id.* at 10-11.

Plaintiff asserts that Defendant Chastain retaliated against him for his use of the grievance process. *Id.* at 11. To support his claim of retaliation, Plaintiff explains that he has an Administrative Restrictive Housing Report dated March 24, 2026 requesting that Defendant Williams change Plaintiff's custody classification from PHD to "other security risk" ("OSR"). *Id.* Defendant Williams upheld Defendant Chastain's finding that Plaintiff's grievance concerned a

classification issue. *Id.* The matter was then forwarded to Defendant Zmuda, who upheld Defendant Williams' decision. *Id.*

In Count II of the complaint, Plaintiff asserts the violation of his rights under the First, Fifth, and Fourteenth Amendments by the illegal enforcement of IMPP 12-140A. (Doc. 1, p. 8.) IMPP 12-140A sets forth the policy and procedures for addressing adult KDOC residents suspected to be in an altered state. *Id.* at 8, 12. Plaintiff alleges that he was housed with a resident named Mr. Gardner. *Id.* at 12. Mr. Gardner incurred six altered state violations and Plaintiff received four disciplinary violations due to Mr. Gardner being in an altered state. *Id.* at 12. Each time, Plaintiff was medically assessed by Centurion staff and deemed sober and not in an altered state, yet he received disciplinary reports stating that he had been in an altered state. *Id.* These reports led to Plaintiff being removed from general population and placed on restrictive housing, missing work, losing wages and ultimately his job, and having his property seized. *Id.*

In the disciplinary hearings stemming from the first two reports, Plaintiff submitted as evidence the names of the medical staff who assessed him and he was found not guilty of being in an altered state. *Id.* Plaintiff alleges that Defendants Clark and Dean discovered that results of the first two disciplinary hearings and they asked Head Disciplinary Officer McCollough[2] why Plaintiff had been found not guilty. *Id.* at 12-13. Defendant Dean then emailed all Centurion staff and informed them that no medical staff responding to altered-state calls are allowed to assess resident intoxication and, based on security reasons, medical staff must assess only whether the resident is safe to transport. *Id.* at 13.

[2] Plaintiff refers to "Head Disciplinary Officer Defendant McCollough," but he has not named Officer McCollough as a defendant in this action. (*See* Doc. 1, p. 1-2, 4-7, 12.) If Plaintiff wishes to name Officer McCollough as a defendant in this case, he must do so in his amended complaint and set forth the information required by the form.

The next time Mr. Gardner was found in an altered state, Plaintiff was found guilty of a disciplinary violation for being in an altered state, for which Plaintiff received 7 days of segregation and 30 days of restriction, and he was required to pay $15.00 in fines. *Id.* Plaintiff was not provided a urine test, as he asserts is required by the relevant IMPP, and he alleges that in retaliation, Defendants claimed that he was in possession of K-3—synthetic marijuana—as shown by an unknown drug testing kit used by disciplinary officers. *Id.* In the disciplinary hearing, Plaintiff requested additional drug testing, which Defendant Scott denied. *Id.*

In Count III of the complaint, Plaintiff asserts the violation of his Eighth Amendment rights due to prolonged pain and suffering. *Id.* at 9. As supporting facts for Count III, Plaintiff first alleges that he suffers from ventricular fibrillation, a heart problem for which Centurion staff initially provided an acceptable treatment plan. *Id.* at 14. In the past 6 years, his condition has declined. Plaintiff required two emergency room visits due to rapid uncontrolled ventricular fibrillation, as reflected in electrocardiograms, yet Centurion staff have declined to alter his medication or offer an alternative form of treatment. *Id.* Plaintiff states that a cardiologist not affiliated with the KDOC now has recommended cardiac ablation to correct the problem. *Id.*

Second, Plaintiff alleges that he has a softball-sized hernia in the left side of his lower groin that causes him extreme pain, but Centurion staff have offered him only Tylenol and have not provided him with a hernia belt or an appointment with an "outside doctor." *Id.* Somewhat contradictorily, Plaintiff also alleges that Centurion staff have informed him that he has been scheduled for corrective surgery, but he has had to manually reduce the hernia for approximately 3 years. *Id.* at 15.

Third, Plaintiff alleges in Count III that for the past 18 months, he has suffered from extreme pain and constant emotional stress due to three growths in his mouth and throat. *Id.*

Although Centurion staff felt two of the growths, they had no tool with which to examine them more closely and have made no clinical diagnosis. *Id.* Plaintiff has attended 27 sick calls related to the growths and, at his suggestion, he was sent to the dentist, who used a dental mirror to examine the growths and recommended a biopsy, which it seems never occurred. *Id.* Plaintiff fears he may have undiagnosed and untreated esophageal cancer. *Id.*

Plaintiff also broadly asserts that "Defendants['] access to [his] medical records" violates HIPAA and that Defendants have intentionally created administrative policies that deny medical treatment and serve no penological or public interest. *Id.* As relief in this case, Plaintiff seeks compensatory and punitive damages. *Id.* at 16-17.

## II. Screening Standards

Because Plaintiff is a prisoner and proceeds in forma pauperis, the Court is required by statute to screen his complaint and to dismiss it or any portion thereof that is frivolous, fails to state a claim on which relief may be granted, or seeks relief from a defendant immune from such relief. 28 U.S.C. § 1915A(a) and (b); 28 U.S.C. § 1915(e)(2)(B). During this screening, the Court liberally construes this pro se complaint and holds it to "less stringent standards than formal pleadings drafted by lawyers." *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In addition, the Court accepts all well-pleaded allegations in the complaint as true. *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006). On the other hand, the Court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf." *See Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988)

(citations omitted); *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992). "[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007). Furthermore, a pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted.)

The Court must determine whether Plaintiff has "nudge[d] his claims across the line from conceivable to plausible." *See Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009) (quotation marks and citation omitted). "Plausible" in this context refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent," then the plaintiff has not met his or her burden. *Robbins v. Okla.*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Twombly*, 550 U.S. at 570).

## III. Discussion

### A. Joinder

The complaint now before this Court does not comply with the rules on joining defendants and claims in a single action. Federal Rule of Civil Procedure 20(a)(2) governs permissive joinder of defendants and pertinently provides:

> (2) Defendants. Persons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action.

Rule 18(a) governs joinder of claims and pertinently provides: "A party asserting a claim . . . may join . . . as many claims as it has against an opposing party."

While joinder is encouraged for purposes of judicial economy, the "Federal Rules do not contemplate joinder of different actions against different parties which present entirely different factual and legal issues." *Zhu v. Countrywide Realty Co., Inc.*, 160 F. Supp. 2d 1210, 1225 (D. Kan. 2001) (citation omitted). The Court of Appeals for the Seventh Circuit has explained that under "the controlling principle" in Rule 18(a), "[u]nrelated claims against different defendants belong in different suits." *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *see also Gillon v. Federal Bureau of Prisons*, 424 F. Appx. 722, 725 (10th Cir. 2011) (unpublished) (where amended complaint combined separate and unrelated claims, many of them arising out of different alleged incidents against multiple defendants, the court rejected plaintiff's argument that his claims were related because they all allege constitutional violations relating to his overarching allegation of retaliation by prison officials).

In other words, under Rule 18(a), "multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits." *George*, 507 F.3d at 607. Thus, under Rule 18(a), Plaintiff may bring multiple claims against a single defendant. Under Rule 20(a)(2), he may join in one action any other defendants who were involved in the same transaction or occurrence and as to whom there is a common issue of law or fact. He may not bring multiple claims against multiple defendants unless the prescribed connection in Rule 20(a)(2) is demonstrated with respect to all defendants named in the action.

The complaint now before the Court contains multiple claims that do not involve all named Defendants and it contains claims that are not brought against all Defendants, do not arise from

the same transaction or occurrence, and do not involve common questions of law or fact. Generally speaking, Plaintiff's claims relate to disciplinary proceedings, the implementation of IMPP 12-140A, and medical care and treatment. Even liberally construing the complaint, as is appropriate since Plaintiff proceeds pro se, the complaint appears to allege various Defendants were involved in various civil rights violations. Thus, the complaint appears to violate both Rule 18(a) and 20(a)(2).

The Federal Rules authorize the Court, on its own initiative at any stage of the litigation, to drop any party and sever any claim. *See* Fed. R. Civ. P. 21; *Nasious v. City & Cnty. of Denver Sheriff's Dept.*, 415 Fed. Appx. 877, 881 (10th Cir. 2011) (holding that to remedy improperly joined claims or parties, the court has two options: (1) misjoined parties may be dropped or (2) any claims against misjoined parties may be severed and proceeded with separately). In this case, however, the complaint is also subject to dismissal in its entirety for additional reasons. Therefore, the Court will identify the additional deficiencies in the complaint and grant Plaintiff time to file an amended complaint that contains (1) only claims that arise against a single defendant or, if Plaintiff wishes to name multiple defendants, (2) only claims that arise from the same transaction or occurrence and have common questions of fact or law. In the amended complaint, Plaintiff should limit his facts and allegations to properly joined defendants and occurrences.

**B. Additional Deficiencies**

**1. Statute of Limitations**

It plainly appears from the face of the complaint that some of Plaintiff's claims may be subject to dismissal as barred by the applicable two-year statute of limitations. "It is well-settled . . . that 'state law determines the appropriate statute of limitations and accompanying tolling provisions' for § 1983 . . . claims." *Herrera-Zamora v. Crosby*, 769 F. App'x 670, 671 (10th Cir.

2019) (unpublished) (citing *Fratus v. DeLand*, 49 F.3d 673, 675 (10th Cir. 1995)). "The forum state's statute of limitations for personal injury actions governs civil rights claims under both 42 U.S.C. § 1981 and § 1983. . . . In Kansas, that is the two-year statute of limitations in Kan. Stat. Ann. § 60-513(a)." *Brown v. Unified Sch. Dist. 501, Topeka Pub. Sch.*, 465 F.3d 1184, 1188 (10th Cir. 2006) (citations omitted). Although state law governs the length of the limitations period and tolling issues, "the accrual date of a § 1983 cause of action is a question of federal law." *Wallace v. Kato*, 549 U.S. 384, 388 (2007).

Under federal law, the claim accrues "when the plaintiff has a complete and present cause of action." *Id.* (internal quotation marks and citation omitted). In other words, "[a] § 1983 action accrues when facts that would support a cause of action are or should be apparent." *Fogle v. Pierson*, 435 F.3d 1252, 1258 (10th Cir. 2006) (internal quotation marks and citation omitted), *cert. denied* 549 U.S. 1059 (2006). Plaintiff's failure to allege specific dates related to his medical claims leave the Court unable to determine whether his claims are timely.

For example, Plaintiff asserts that he has gone to the emergency room twice in "a [6] year time span," but he does not state even the year or years in which the emergency room visits occurred. (*See* Doc. 1, p. 14.) Nor does he allege when the cardiologist recommended cardiac ablation. *Id.* Similarly, he does not allege when he was told he had been scheduled for surgery to correct his hernia. *Id.* at 15. "[T]o state a claim in federal court, a complaint must explain what each defendant did to [the pro se plaintiff]; *when the defendant did it*; how the defendant's action harmed [the plaintiff]; and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents, at Arapahoe County Justice Center*, 492 F.3d 1158, 1163 (10th Cir. 2007) (emphasis added). If Plaintiff files an amended complaint in this matter, he must therein allege sufficient facts to show when the allegedly unconstitutional acts occurred.

**2. Supervisory Liability and Personal Participation**

To the extent that Plaintiff seeks to bring claims against any named Defendant due to his or her role as a supervisor of individuals who violated Plaintiff's constitutional rights or due to the denial of a grievance, such claims are subject to dismissal. Similarly, Defendant Hallock is subject to dismissal from this action because, even liberally construing the complaint, Plaintiff has failed to allege any specific acts Defendant Hallock took that violated Plaintiff's constitutional rights.

An essential element of a civil rights claim under § 1983 against an individual is that person's direct personal participation in the acts or inactions upon which the complaint is based. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *Trujillo v. Williams*, 465 F.3d 1210, 1227 (10th Cir. 2006). "[V]icarious liability is inapplicable to . . . § 1983 suits, [so] a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). "[T]he defendant's role must be more than one of abstract authority over individuals who actually committed a constitutional violation." *Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008). An allegation that an official denied or failed to respond to a grievance is not enough to show personal participation as required for a plausible claim under § 1983. *See Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009).

If Plaintiff files an amended complaint in this matter, he must not only name each defendant in the caption of the amended complaint, he must do so again in the body of the amended complaint and include in the body a description of the acts taken by each defendant that violated Plaintiff's federal constitutional rights. Moreover, although Plaintiff refers in his complaint to "Defendant Centurion" and "Defendant McCollough," he has not named either as a Defendant (*See* Doc. 1, p. 1-2, 4-7 (identifying defendants), 12 (referring to Defendant Centurion and Defendant

McCollough).) If Plaintiff chooses to name Centurion as a defendant in his amended complaint, he must allege sufficient facts to state a plausible claim against Centurion.

In the Tenth Circuit, "to hold a corporation liable under § 1983 for employee misconduct, a plaintiff must demonstrate the existence of the same sort of custom or policy that permits imposition of liability against municipalities under *Monell*." *Wishneski v. Andrade*, 572 F. App'x 563, 567 (10th Cir. 2014) (unpublished) (citations omitted). A city or municipality—and thus, a corporation—may be liable under 42 U.S.C. § 1983 only when it has deprived a person of his or her constitutional rights or has caused a person to be subjected to such deprivation. *See Connick v. Thompson*, 563 U.S. 51, 60-61 (2011). It is not liable merely for the actions of its employees under a theory of respondeat superior. *See id*. In other words, a corporation "is not directly liable for the constitutional torts of its employees." *See Finch v. Rapp*, 38 F.4th 1234, 1244 (10th Cir. 2022) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)).

Rather, to succeed on a claim against a corporation, Plaintiff "must first show a [company] policy or custom—either an official rule or one so entrenched in practice as to constitute an official policy." *See Finch*, 38 F.4th at 1244. Second, Plaintiff must show that the corporation "was deliberately indifferent to constitutional violations that were the obvious consequence of its policy," by showing that it "had 'actual or constructive notice that its action or failure to act [was] substantially certain to result in a constitutional violation' and 'consciously or deliberately [chose] to disregard the risk of harm.'" *See id.* (quoting *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998)). Third, Plaintiff must show "that the policy directly caused his constitutional injury . . . by showing that the [company] practice was closely related to the deprivation of rights." *See id.* These are "'rigorous standards of culpability and causation.'" *Id.* at 1246 (quoting *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 398 (1997)). Corporate liability also may be premised on

decisions made by employees with final policymaking authority that are relied upon by subordinates or a failure to train or supervise employees that results from a deliberate indifference to the injuries caused. *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 126 (1988); *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1188-89 (10th Cir. 2010).

Finally, Plaintiff's complaint at times uses general and collective terms such as "Defendants" but makes no distinction as to what acts are attributable to whom, making it impossible for any of the individual defendants or the Court to ascertain which Defendants Plaintiff alleges took certain actions. To the extent that Plaintiff's claims are based on such collective allegations without specifying which Defendants are involved and what acts each Defendant took, they are subject to dismissal. For example, Count III is based on claims of deliberate indifference to serious medical need, but at no point does Plaintiff identify individuals who violated his constitutional rights in this context. Rather, he refers generally to "Centurion" and "Centurion medical." To state a plausible claim against a Defendant in his amended complaint, Plaintiff must ensure that he sufficiently alleges the direct personal participation of that particular Defendant in a constitutional violation.

**3. Challenges to Disciplinary Proceedings and Classification**

It appears that Plaintiff may seek to bring Fourteenth Amendment due process claims based on events in his disciplinary proceedings. "The Fourteenth Amendment prohibits states from depriving citizens of liberty without due process of law." *Wilson v. Jones*, 430 F.3d 1113, 1117 (10th Cir. 2005). This guarantee applies to prison inmates, but "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). The Supreme Court has established that protected liberty interests are at issue in the prison setting only when an inmate

is subjected to (1) conditions that "impose[ ] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" or (2) disciplinary actions that "inevitably affect the duration of his sentence." *Harrison v. Morton*, 490 F. App'x 988, 992 (10th Cir. 2012) (quoting *Sandin v. Conner*, 515 U.S. 472, 484, 487 (1995)).

The Supreme Court has held that "the Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement." *Wilkinson v. Austin*, 545 U.S. 209, 221–22 (2005) (citing *Meachum v. Fano*, 427 U.S. 215, 225 (1976) (no liberty interest arising from Due Process Clause itself in transfer from low-to maximum-security prison because "[c]onfinement in any of the State's institutions is within the normal limits or range of custody which the conviction has authorized the State to impose"). "Changing an inmate's prison classification . . . ordinarily does not deprive him of liberty, because he is not entitled to a particular degree of liberty in prison." *Sawyer v. Jefferies*, 315 F. App'x 31, 34 (10th Cir. 2008) (citing *Templeman v. Gunter*, 16 F.3d 367, 369 (10th Cir. 1994) (citing *Meachum*, 427 U.S. at 225)).

Plaintiff does not have a constitutional right to a particular security classification. *See Meachum*, 427 U.S. at 224. Plaintiff has not alleged facts showing that his placement on restriction or in segregation imposed any atypical and significant hardship in relation to the ordinary incidents of prison life. *Cf. Wilkinson*, 545 U.S. at 223–24 (finding atypical and significant hardship in assignment to supermax facility where all human contact prohibited, conversation not permitted, lights on 24-hours-a-day, exercise allowed for only one hour per day in small indoor room, indefinite placement with annual review, and disqualification of otherwise eligible inmate for parole consideration). Any loss of privileges he endured also fails to create a protected liberty interest. This Court has found that where the duration of a prisoner's sentence is not affected, punishments in the form of privilege restrictions and fines fail to create a protected liberty interest.

*See Lewis v. Zmuda*, 2023 WL 8005022, at *10 (D. Kan. Nov. 17, 2023), *aff'd* 2025 WL 1215505 (10th Cir. April 28, 2025) (citing *Beauclair v. High*, No. 14-3020-SAC, 2015 WL 93636, at *3 (D. Kan. Jan. 7, 2015), for the proposition that punishments of fines and segregation for a limited number of days generally fail to implicate a protected liberty interest). "[R]estrictions on an inmate's telephone use, property possession, visitation and recreation privileges are not different in such degree and duration as compared with the ordinary incidents of prison life to constitute protected liberty interests under the Due Process Clause." *Requena v. Roberts*, 893 F.3d 1195, 1218 (10th Cir. 2018) (citation omitted).

Furthermore, § 1983 is not applicable to "challenges to punishments imposed as a result of prison disciplinary infractions," unless the disciplinary conviction has already been invalidated. *Cardoso v. Calbone*, 490 F.3d 1194, 1199 (10th Cir. 2007). The Supreme Court has made clear that "a state prisoner's claim for damages is not cognizable under 42 U.S.C. § 1983 if 'a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence,' unless the prisoner can demonstrate that the conviction or sentence has previously been invalidated." *Edwards v. Balisok*, 520 U.S. 641, 643 (1997) (quoting *Heck v. Humphrey*, 512 U.S. 477, 487 (1994)). This rule applies not only when the prisoner challenges his conviction but also when he challenges punishments imposed as a result of prison disciplinary infractions. *Balisok*, 520 U.S. at 648. Thus, to the extent that Plaintiff seeks to challenge disciplinary convictions that have not been invalidated or he seeks to challenge sanctions imposed for disciplinary convictions that have not been invalidated, he has failed to state a plausible claim for relief.

**4. HIPAA Claims**

To the extent that Plaintiff's brief reference to violations of HIPAA in Count III is intended to state a claim, it is subject to dismissal for failure to state a claim on which relief can be granted.

The Tenth Circuit Court of Appeals has determined that HIPAA does not create a private right of action for unlawful disclosures of medical information. *See Wilkerson v. Shinseki*, 606 F.3d 1256, 1267 n.4 (10th Cir. 2010) ("Any HIPAA claim fails as HIPAA does not create a private right of action for alleged disclosures of confidential medical information."). Additionally, Plaintiff provides no details in the complaint about the alleged violations; he fails to state when they occurred, what events violated HIPAA, which Defendants were involved, or any other details.

**IV. Amended Complaint Required**

As explained above, the complaint now before the Court contains multiple deficiencies that leave it subject to dismissal in its entirety. Plaintiff will be granted the opportunity to file a complete and proper amended complaint upon court-approved forms that cures these deficiencies. To add claims, significant factual allegations, or change defendants, a plaintiff must submit a complete amended complaint. *See* Fed. R. Civ. P. 15. The amended complaint is not simply a supplement to the original complaint; instead, it completely replaces the original complaint. Therefore, any defendants, claims, or factual allegations not included in the amended complaint will no longer be before the Court. Plaintiff may not simply refer in the amended complaint to his earlier complaint or the attachments thereto, nor may he attempt to incorporate previous filings by reference. The amended complaint must contain all allegations and claims that Plaintiff intends to pursue in the action, including those to be retained from the original complaint.

Plaintiff must write the number of this case (26-3218-JWL) at the top of the first page of the amended complaint and he must name every defendant in the caption of the amended complaint. *See* Fed. R. Civ. P. 10(a). Plaintiff must also refer to each defendant again in the body of the amended complaint, where he must allege facts describing the unconstitutional acts taken by each defendant, including dates, locations, and circumstances. Although Plaintiff may attach

additional pages to the form complaint if necessary, he should not use the form merely to refer the Court to attached pages and, as he did with his initial complaint, he should clearly label the additional pages to indicate which portion of the form is being supplemented. If Plaintiff does not file within the prescribed time an amended complaint that cures the deficiencies discussed herein, this matter may be dismissed without further prior notice to Plaintiff.

**V. Motion for Temporary Restraining Order and Preliminary Injunction (Doc. 2)**

Also before the Court is Plaintiff's motion for temporary restraining order and preliminary injunction, filed July 7, 2026. (Doc. 2.) Plaintiff asks this Court to (1) order Defendants Zmuda and Williams to respond to Plaintiff's challenge to IMPP 12-140A; (2) order Defendant Zmuda to order Centurion medical to schedule an immediate biopsy of the growths in Plaintiff's mouth and throat; and (3) order the United States Marshals Service to enforce the first two orders. (Doc. 2, p. 1-2.) Plaintiff has submitted two declarations (Docs. 2-1 and 2-2) and a memorandum of law (Doc. 3), all of which the Court has carefully considered.

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). A preliminary injunction is appropriate only when the movant's right to relief is clear and unequivocal. *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258 (10th Cir. 2005).

> "When seeking a preliminary injunction, 'the moving party must demonstrate: (1) a likelihood of success on the merits; (2) a likelihood that the movant will suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the movant's favor; and (4) that the injunction is in the public interest.' In addition, the movant must establish 'a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint.' A mandatory preliminary injunction--one which requires the nonmoving party to take affirmative action--is 'an extraordinary remedy' and is generally disfavored. Before a court may grant such relief, the movant must 'make a heightened showing of the [] factors.'"

*Little v. Jones*, 607 F.3d 1245, 1251 (10th Cir. 2010) (internal citations omitted).

It is clear in this case that Plaintiff's requested preliminary injunctions are related to the conduct complained of in the complaint, specifically the application of IMPP 12-140A and the lack of medical treatment for the growths in Plaintiff's mouth and throat. As noted above, however, this case is in the initial screening phase of proceedings and currently is subject to dismissal. Thus, the Court cannot conclude, at this time, that Plaintiff has shown a likelihood that he will succeed on the merits of the related claims in this matter. Additionally, Plaintiff has not shown a likelihood that he will suffer irreparable harm if the Court declines to issue the requested order.

"To constitute irreparable harm, an injury must be certain, great, actual and not theoretical." *Heideman v. S. Salt Lake City,* 348 F.3d 1182, 1189 (10th Cir. 2003) (internal quotation marks omitted). Although the Court sympathizes with Plaintiff's fears concerning his health, the factual allegations in the complaint, even when liberally construed and taken as true, do not reflect Plaintiff will suffer certain, great, and actual injury if the Court does not grant the requested mandatory preliminary injunctions. Accordingly, the motion (Doc. 2) will be denied without prejudice to refiling if this case survives the screening process.

**IT IS THEREFORE ORDERED BY THE COURT** that the motion for temporary restraining order and preliminary injunction (**Doc. 2**) is **denied without prejudice** to refiling if this case survives screening.

**IT IS FURTHER ORDERED** that Plaintiff is granted until and including **October 1, 2026** to submit either the $2.50 initial partial filing fee assessed on July 22, 2026 or the full filing fee of $350.00. If Plaintiff fails to timely submit payment in one of these amounts, this case may be dismissed without further prior notice to him.

**IT IS FURTHER ORDERED** that Plaintiff is granted until and including **October 15, 2026** to file a complete and proper amended complaint, on the required form, that cures the deficiencies identified in this order. If Plaintiff fails to do so, this case may be dismissed without further prior notice to him. The clerk is directed to send Plaintiff the appropriate form for filing an amended complaint.

**IT IS SO ORDERED**.

DATED: This 1st day of September, 2026 in Kansas City, Kansas.

**S/ John W. Lungstrum**
**JOHN W. LUNGSTRUM**
**UNITED STATES DISTRICT JUDGE**